# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JAMES BOBRESKI,        :

           Plaintiff,      :      Civil Action No.:     02-0732 (RMU)

           v.          :      Document Nos.:      7, 11

U.S. ENVIRONMENTAL PROTECTION   :
AGENCY,                  :

           Defendant.     :

**FILED**

**SEP 3 0 2003**

NANCY MAYER WHITTINGTON, CLERK
U S DISTRICT COURT

## MEMORANDUM OPINION

### GRANTING THE DEFENDANT'S MOTION TO DISMISS THE PLAINTIFF'S FIRST CLAIM; GRANTING THE DEFENDANT'S ALTERNATIVE MOTION FOR SUMMARY JUDGMENT ON THE PLAINTIFF'S SECOND CLAIM; DENYING THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

This whistleblower case arises out of the exposé of conditions at the Blue Plains wastewater treatment facility ("Blue Plains") run by the District of Columbia Water and Sewer Authority ("WASA"). The plaintiff, a former Blue Plains employee, contacted the Washington Post ("the Post") to report what he viewed as alarming deficiencies with Blue Plains' chlorine alarm system. The resulting front-page article prompted a visit from an Environmental Protection Agency ("EPA") inspector. The plaintiff, however, lost his job. He filed for federal whistleblower protection and won. After WASA appealed the matter to an administrative law judge ("ALJ"), both parties requested the inspector's testimony, and the ALJ issued a subpoena for the testimony. Citing to its regulations, EPA refused to permit the inspector to testify. The plaintiff now brings this action alleging that EPA's refusal violates the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 *et seq.* Because the court lacks subject-matter jurisdiction over the plaintiff's subpoena claim, the court grants the defendant's motion to dismiss. As for EPA's



denial of the plaintiff's request for testimony, the court determines that the denial was not

arbitrary or capricious, and accordingly grants the defendant's alternative motion for summary

judgment and denies the plaintiff's motion for summary judgment.

## II.  BACKGROUND

### A.  Factual Background

In 1999, while working as a technician at Blue Plains, the plaintiff observed what he

believed were serious deficiencies in the use and storage of liquid chlorine at Blue Plains.

Compl. ¶ 6; Pl.'s Mot. for Summ. J. ("Pl.'s Mot.") at 2.  While testing the chlorine alarm system,

the plaintiff discovered rusted and corroded pipe structures as well as sensors and alarms that

appeared to have been intentionally disconnected.  Pl.'s Mot. at 2-3.  The plaintiff raised his

concerns with WASA management.  *Id.* at 3.  After WASA failed to take "meaningful corrective

action," the plaintiff took his concerns to the Post, which began an investigation.  *Id.*  On

November 5, 1999, the Post published a front-page article detailing the alleged failures at Blue

Plains.  Def.'s Statement of Undisputed Material Facts ("Def.'s Statement") ¶ 2.  Four days later,

in response to the article, EPA sent an inspector to Blue Plains.  *Id.* ¶¶ 1-2; Pl.'s Statement of

Undisputed Material Facts ("Pl.'s Statement") ¶ 9.

In late October 1999, a few days before the Post published its article, WASA terminated

the plaintiff's employment.  Pl.'s Mot. at 3.  Alleging that WASA fired him in retaliation for

reporting the failures of the sensor system, the plaintiff filed a complaint with the Department of

Labor ("the Department") pursuant to the whistleblower-protection provisions of six

environmental statutes: the Clean Air Act ("CAA"), 42 U.S.C. § 7622; the Safe Drinking Water

Act ("SDWA"), 42 U.S.C. § 300j-9; the Solid Waste Disposal Act ("SWDA"), 42 U.S.C. § 6971;

the Water Pollution Control Act ("WPCA"), 33 U.S.C. § 1367; the Comprehensive

Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9610; and

the Toxic Substances Control Act ("TSCA"), 15 U.S.C. § 2622.[1]  *Id.* at 3-4.  In March 2001, after

conducting an investigation, the Department's Occupational Safety and Health Administration

("OSHA") determined that the plaintiff's termination violated all six statutes, directed WASA to

reinstate the plaintiff and awarded him damages.  *Id.* at 4.

    WASA appealed OSHA's determination, and the Department assigned the appeal to an

ALJ.  *Id.*  Prior to the first hearing, both the plaintiff and WASA asked EPA to produce the

inspector as a witness for the hearing.  Def.'s Statement ¶ 3; Pl.'s Statement ¶¶ 1, 3.  In October

2001, WASA sent EPA a written request, following up a month later with a subpoena issued by

another ALJ.  Def.'s Statement ¶¶ 3, 5-6; Def.'s Mot. Attach. A.  EPA responded to the request

and subpoena by issuing a determination indicating that pursuant to EPA regulations, the

inspector would not be available to testify.  Def.'s Statement ¶¶ 7-8; Def.'s Mot. Attach. B.

Instead, EPA asked the inspector to draft an affidavit.  Def.'s Statement ¶ 9.  The inspector

agreed, and affirmed his Blue Plains inspection activities and findings in a notarized affidavit.

*Id.*; Def.'s Mot. Attach. C.

    In response to the affidavit, the plaintiff's counsel contacted EPA in December 2001 to

express concerns about the affidavit and its contents.  Def.'s Statement ¶ 10.  A conference call

---

[1]  The Secretary of Labor is charged with responsibility for implementing the whistleblower
provisions of the six environmental statutes. 29 C.F.R. § 24.1.  Pursuant to regulation, the Office of the
Assistant Secretary of OSHA conducts the initial investigation and makes a determination as to whether a
violation has occurred. *Id.*§ 24.4.  If either party requests a hearing to review OSHA's determination, the
determination becomes inoperative and the matter is assigned to an ALJ within the Department of Labor.
*Id.* §§ 24.4, 24.6.  The ALJ conducts hearings pursuant to the hearing provisions of the APA, and issues a
recommended decision. *Id.* § 24.7.  That decision becomes final unless a petition for review is filed with
the Administrative Review Board, to which the Secretary has delegated the authority to issue final
decisions. *Id.* §§ 24.7, 24.8.  For a detailed description of this administrative process, see *R.I. Dep't of
Envtl. Mgmt. v. United States*, 304 F.3d 31, 37-38 (1st Cir. 2002).

ensued between the plaintiff's counsel, an assistant to the plaintiff's counsel, EPA and the inspector.[2]  *Id.* ¶ 11.  Subsequently, the plaintiff wrote to EPA to request that the call, as memorialized by the plaintiff's counsel's assistant, be reduced to an affidavit for the inspector's signature.[3]  *Id.* ¶¶ 12-13 & Attach. E.  At the same time, in a separate letter, the plaintiff sent EPA a subpoena issued by the ALJ presiding over the administrative hearings.  *Id.* ¶¶ 14-15; Def.'s Mot. Attach. D; Pl.'s Statement ¶ 4.  EPA responded to the subpoena by issuing a second determination, again indicating that pursuant to EPA regulations, the inspector would not be available to testify.  Def.'s Statement ¶ 16; Def.'s Mot. Attach. F.

In January 2002, the plaintiff filed a motion to order testimony with the ALJ.  Def.'s Statement ¶ 17; Pl.'s Mot. Attach. 4 ("ALJ Order").  In March 2002, the ALJ issued an order denying the plaintiff's motion.  *Id.*  In her order, the ALJ first stated that the inspector had relevant information regarding EPA requirements for facilities such as Blue Plains, the condition of Blue Plains at the time of his inspection, and witness credibility.  ALJ Order at 2.  The ALJ then concluded, based on a 2000 Administrative Review Board ("ARB") decision and Department regulations, that she had inherent authority to issue subpoenas.  *Id.* at 2-3 (citing 29 C.F.R. § 18.24(d); *Childers v. Carolina Power & Light Co.*, No. 97-ERA-32 (A.R.B. Dec. 29, 2000)).  She found, however, that her authority did not extend to enforcement of subpoenas.  *Id.* at 3.  Noting that the issue as to whether EPA could bar its employee from testifying should be directed to this court, she denied the plaintiff's motion.  *Id.*

### B. Procedural History

---

[2]  WASA's counsel did not participate in the conference call.  Def.'s Statement ¶ 11.

[3]  The plaintiff contends that prior to the conference call, the parties reached an understanding that the inspector would provide an affidavit "based on what [the inspector] disclosed during the interview."  Pl.'s Resp. to Def.'s Statement ¶ 13.  According to the plaintiff, EPA refused to permit the inspector to sign an affidavit, thereby violating the parties' understanding.  *Id.*

On April 17, 2002, the plaintiff filed a complaint in this court, alleging that EPA violated the APA by (1) denying the plaintiff's request for the inspector to testify and (2) failing to comply with the ALJ's subpoena directing the inspector to testify.[4]  Compl. ¶¶ 30-33.  The plaintiff seeks injunctive and declaratory relief directing EPA to produce the inspector as a witness.  *Id.* at 9.  On June 17, 2002, EPA filed an answer.  The plaintiff filed a motion for summary judgment on July 30, 2002.  In turn, the defendant filed a motion to dismiss or, in the alternative, for summary judgment on September 6, 2002.  The court now turns to the parties' motions.

## III.  ANALYSIS

### A.  Legal Standard for a Motion to Dismiss

Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies outside this limited jurisdiction."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938).  Because "subject-matter jurisdiction is an 'Art. III as well as a statutory requirement[,] no action of the parties can confer subject-matter jurisdiction upon a federal court.'"  *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003) (quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxite de Guinea*, 456 U.S. 694, 702 (1982)).  On a motion to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1), the plaintiff bears the burden of establishing that the court has subject-matter jurisdiction.  *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999); *Rasul v. Bush*, 215 F. Supp. 2d 55, 61 (D.D.C. 2002) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 182-83 (1936)).  The court may dismiss a complaint for lack of

---

[4]  The plaintiff stresses that these two claims – one based on the ALJ subpoena, and one based on the plaintiff's request – are separate and distinct.  Pl.'s Opp'n at 3-4.

subject-matter jurisdiction only if "'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Empagran S.A. v. F. Hoffman-Laroche, Ltd.*, 315 F.3d 338, 343 (D.C. Cir. 2003) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

Because subject-matter jurisdiction focuses on the court's power to hear the claim, however, the court must give the plaintiff's factual allegations closer scrutiny when resolving a Rule 12(b)(1) motion than would be required for a Rule 12(b)(6) motion for failure to state a claim. *Macharia v. United States*, 334 F.3d 61, 64, 69 (D.C. Cir. 2003); *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001). Moreover, the court is not limited to the allegations contained in the complaint. *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987). Instead, to determine whether it has jurisdiction over the claim, the court may consider materials outside the pleadings. *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992).

### B. Legal Standard for a Motion for Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). To determine which facts are "material," a court must look to the substantive law on which each claim rests. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

In ruling on a motion for summary judgment, the court must draw all justifiable

inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true.

*Anderson*, 477 U.S. at 255.  A nonmoving party, however, must establish more than "the mere

existence of a scintilla of evidence" in support of its position.  *Id.* at 252.  To prevail on a motion

for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a

showing sufficient to establish the existence of an element essential to that party's case, and on

which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.  By pointing to

the absence of evidence proffered by the nonmoving party, a moving party may succeed on

summary judgment.  *Id.*

    In addition, the nonmoving party may not rely solely on allegations or conclusory

statements.  *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999); *Harding v. Gray*, 9 F.3d 150,

154 (D.C. Cir. 1993).  Rather, the nonmoving party must present specific facts that would enable

a reasonable jury to find in its favor.  *Greene*, 164 F.3d at 675.  If the evidence "is merely

colorable, or is not significantly probative, summary judgment may be granted."  *Anderson*, 477

U.S. at 249-50 (internal citations omitted).

## C. Legal Standard for Judicial Review of Agency Denials of Requests for Testimony Pursuant to Agency *Touhy* Regulations

    Pursuant to 5 U.S.C. § 301, the federal "housekeeping" statute, an agency may create

procedures for responding to subpoenas and requests for testimony.  *Comsat v. Nat'l Sci. Found.*,

190 F.3d 269, 272 n.3 (4th Cir. 1999).  Specifically, section 301 authorizes the head of an agency

to "prescribe regulations for the government of his department, the conduct of its employees, the

distribution and performance of its business, and the custody, use, and preservation of its records,

papers, and property."  5 U.S.C. § 301; *Alexander v. Fed. Bureau of Investigation*, 186 F.R.D. 66,

69 (D.D.C. 1998).  Known as *Touhy* regulations pursuant to a well-known Supreme Court

decision, such regulations "recognize[] the authority of agency heads to restrict testimony of their subordinates." *Alexander*, 186 F.R.D. at 69 (internal citations omitted); *see also Comsat*, 190 F.3d at 272 n.3 (describing the origin of the term "*Touhy* regulations"). Once an agency has enacted valid *Touhy* regulations, an agency employee cannot be forced to testify.[5] *Houston Business Journal, Inc. v. Office of Comptroller of Currency*, 86 F.3d 1208, 1212 (D.C. Cir. 1996).

A party challenging an agency's *Touhy*-based denial of a subpoena or request for testimony "must proceed under the APA, and the federal court will review the agency's decision not to permit its employee to testify under an 'arbitrary and capricious' standard." *Houston Business Journal*, 86 F.3d at 1212 n.4; *In re Wash. Consulting Group v. Monroe*, 2000 WL 1195290, at *4 (D.D.C. July 24, 2000). The party challenging the denial bears the burden of showing that the denial was arbitrary and capricious, and must make a strong showing that the testimony is necessary. *Kauffman v. Dep't of Labor*, 1997 WL 825244, at *2 (E.D. Pa. Dec. 19, 1997); *Wade v. Singer Co.*, 130 F.R.D. 89, 92 (N.D. Ill. 1990).

If the court determines that the agency's denial is arbitrary or capricious, it must set aside the agency action. 5 U.S.C. § 706; *Tourus Records, Inc. v. Drug Enforcement Admin.*, 259 F.3d 731, 736 (D.C. Cir. 2001). In making its determination, the reviewing court "must consider whether the [agency's] decision was based on a consideration of the relevant factors and whether

---

[5] It is worth emphasizing that *Touhy*'s holding is limited. The *Touhy* Court simply established that "a superior government official could withdraw from his subordinates the power to release government documents." *Smith v. C.R.C. Builders Co., Inc.*, 626 F. Supp. 12, 14 (D. Colo. 1983). The Court expressly refrained from addressing the extent of the agency's authority to withhold evidence from a court. *Touhy*, 340 U.S. at 467. The question before the court in the instant case focuses only on EPA's ability under its *Touhy* regulations to prevent its employee from testifying, not on EPA's ability to withhold evidence from the court. For case law regarding the ability of an agency to withhold evidence from a court, see *Houston Business Journal*, 86 F.3d at 1212; *Exxon Shipping Co. v. Dep't of Interior*, 34 F.3d 774, 778 (9th Cir. 1994); *Alexander*, 186 F.R.D. at 70.

there has been a clear error of judgment." *Marsh v. Or. Natural Res. Council*, 490 U.S. 360, 378

(1989) (internal quotations omitted).  At a minimum, the agency must have considered relevant

data and articulated an explanation establishing a "rational connection between the facts found

and the choice made." *Bowen v. Am. Hosp. Ass'n*, 476 U.S. 610, 626 (1986); *Tourus Records*,

259 F.3d at 736.  "[T]he scope of review under the 'arbitrary and capricious' standard is narrow

and a court is not to substitute its judgment for that of the agency." *Motor Veh. Mfrs. Ass'n v.

State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).  Rather, the agency action under review

is "entitled to a presumption of regularity." *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401

U.S. 402, 415 (1971), *abrogated on other grounds, Califano v. Sanders*, 430 U.S. 99 (1977).

## D.  The Parties' Arguments

The plaintiff presents a number of arguments in support of his position that EPA should

grant his request for the inspector to testify and comply with the ALJ subpoena.  First, the

plaintiff argues that EPA's *Touhy* regulations do not apply to his case because the Secretary of

Labor functions as a party to the whistleblower proceedings, and EPA's *Touhy* regulations are

generally inapplicable to proceedings where a federal agency is a party.  Pl.'s Mot. at 10.  Second,

the plaintiff contends that EPA's failure to comply with the ALJ subpoena amounts to an

unlawful assertion of sovereign immunity.  *Id.* at 11-13.  Third, the plaintiff asserts that EPA

must defer to the ALJ's determination that the testimony of the inspector is relevant to the

administrative proceedings.  *Id.* at 13-14.  Fourth, the plaintiff states that his need for the

testimony clearly outweighs EPA's justifications for withholding the testimony.  *Id.* at 15-22.

Finally, the plaintiff argues that the ALJ had authority to issue the subpoena given the ARB's

*Childers* decision and the deference afforded that decision under the *Chevron* doctrine.  Pl.'s

Opp'n at 8-17 (citing *Childers*, No. 97-ERA-32 and *Chevron U.S.A., Inc. v. Natural Res. Def.*

*Council, Inc.*, 467 U.S. 837 (1984)).

In response, EPA argues that the plaintiff's APA challenge must fail because the ALJ did not have the requisite statutory authority to issue a subpoena. Def.'s Mot. at 4-18. Specifically, EPA contends that subpoena power is not an intrinsic feature of the administrative process and cannot be assumed without explicit statutory authorization. *Id.* at 8-18. EPA asserts that because there is no explicit statutory authorization here, the ARB and ALJ conclusions that they have implied subpoena authority do not merit *Chevron* deference. Def.'s Reply at 5. Alternatively, EPA argues that even if the ALJ has subpoena authority, EPA's failure to comply with the subpoena was not arbitrary or capricious under the APA. Def.'s Mot. at 18. First, EPA states that its *Touhy* regulations apply because the Secretary of Labor is not a party to the administrative proceedings. *Id.* at 20-24. EPA then argues that its determinations that the inspector would not be available to testify outlined a rational basis for its decision. *Id.* at 24-27. In addition, EPA states that by providing the inspector's affidavit, it has addressed the relevant matters identified by the ALJ. *Id.* at 27-30. Finally, EPA asserts that the cumulative impact of this and other subpoenas would place an undue burden on its limited resources. *Id.* at 30-36.

### E. The Court Concludes That It Lacks Subject-Matter Jurisdiction Over the Plaintiff's Subpoena Claim

#### 1. The *Chevron* Analysis

In determining whether an agency proffers a permissible interpretation of a statute it administers, the court employs the two-step *Chevron* analysis. *Chevron*, 467 U.S. at 842-43. As a threshold matter, the court "must first exhaust the traditional tools of statutory construction to determine whether Congress has spoken to the precise question at issue." *Halverson v. Slater*, 129 F.3d 180, 184 (D.C. Cir. 1997) (internal quotations omitted). If, after applying accepted canons of construction, the court determines that Congress has spoken to the precise issue, "then

the case can be disposed of under the first prong of *Chevron*." *Halverson*, 129 F.3d at 184 (internal quotations omitted). If the court determines that the statute is silent or ambiguous with regard to the issue, however, the second prong of *Chevron* directs the court to defer to a permissible agency construction of the statute. *Id.* (internal quotations omitted).

With regard to *Chevron* step one, "the starting point, and the most traditional tool of statutory construction, is to read the text itself." *S. Calif. Edison Co. v. Fed. Energy Regulatory Comm'n*, 195 F.3d 17, 23 (D.C. Cir. 1999). The court should not limit itself to examining a statutory provision in isolation but must look to the language and design of the statute as a whole, as "[i]t is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132-33 (2000); *S. Calif. Edison*, 195 F.3d at 23. In addition, the court may look to legislative history. *Citizens Coal Council v. Norton*, 330 F.3d 478, 481 (D.C. Cir. 2003). To evaluate omissions of language, courts take note that "[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Halverson*, 129 F.3d at 186 (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)). This canon of construction, however, applies only to sections enacted within the same legislative act. *Id.*

### 2. Because Congress Has Spoken to the Precise Question at Issue, the ALJ Does Not Have Subpoena Authority

Looking to the plain meaning of the six environmental statutes that form the basis for the plaintiff's whistleblower action, the court concludes that Congress did not intend to provide the Secretary of Labor (and hence the ALJ) with subpoena authority. *S. Calif. Edison*, 195 F.3d at 23; *Halverson*, 129 F.3d at 184. Starting with "the text itself," the court notes that all six statutes

11

set forth the authority of the Secretary of Labor to investigate whistleblower-discrimination

allegations as follows:

> Upon receipt of [an application for review of an employee discharge], the Secretary of Labor shall cause such investigation to be made as he deems appropriate. Such investigation shall provide an opportunity for a public hearing at the request of any party to such review to enable the parties to present information relating to such alleged violation. The parties shall be given written notice of the time and place of the hearing at least five days prior to the hearing. Any such hearing shall be of record and shall be subject to section 554 of Title 5. Upon receiving the report of such investigation, the Secretary of Labor shall make findings of fact. If he finds that such violation did occur, he shall issue a decision, incorporating an order therein and his findings, requiring the party committing such violation to take such affirmative action to abate the violation as the Secretary of Labor deems appropriate, including, but not limited to, the rehiring or reinstatement of the employee or representative of employees to his former position with compensation. If he finds that there was no such violation, he shall issue an order denying the application.

15 U.S.C. § 2622; 42 U.S.C. §§ 300j-9, 6971, 7622, 9610; 33 U.S.C. § 1367. The text clearly

does not grant the Secretary of Labor subpoena authority. *Id.*; *see also* 29 C.F.R. part 18

(implementing the whistleblower provisions of the six environmental statutes without

mentioning subpoena authority); ALJ Order at 4 (stating that "there is no express subpoena

authority in the employee protection statutes").

Nor does the language or design of any of the six statutes as a whole suggest that implied

subpoena authority exists. *S. Calif. Edison*, 195 F.3d at 23. In fact, just the opposite is true:

because each statute except the SDWA contains some form of subpoena authority enacted

elsewhere in the same legislation as its whistleblower provision, Congress' omission of

whistleblower subpoena authority appears to be intentional. *Id.* Congress enacted the CAA

whistleblower provision in the same legislation in which it authorized the EPA administrator to

issue subpoenas for primary nonferrous smelter orders and to investigate CAA-related

employment impacts. Clean Air Act Amendments of 1977, Pub. L. No. 95-95, §§ 311-12

(1977). Likewise, the SWDA whistleblower provision and authority for the EPA administrator

12

to issue subpoenas in public hearings appeared in the same legislation.  Resource Conservation

and Recovery Act of 1976, Pub. L. No. 94-580, § 2 (1976).  In CERCLA, Congress authorized

both the whistleblower provision and subpoena power for an arbitration board charged with

resolving hazardous-substances claims.[6]  Comprehensive Environmental Response,

Compensation, and Liability Act of 1980, Pub. L. No. 96-510, §§ 110, 112 (1980).  The TSCA

contained the whistleblower provision as well as subpoena authority for the EPA administrator to

carry out the legislation.[7]  Toxic Substances Control Act of 1976, Pub. L. No. 94-469, §§ 11, 23

(1976).  Legislation amending the WPCA included both the whistleblower provision and

authority for the EPA administrator to issue subpoenas to obtain information regarding state

water quality and to evaluate the employment impact of effluent orders.  Water Pollution Control

Act Amendments of 1972, Pub. L. No. 92-500, § 2 (1972).

     As for the SDWA, it contains no subpoena authority against which to compare the

whistleblower provision.  *See generally* 42 U.S.C. §§ 300f *et seq.*  The legislative history,

however, demonstrates that Congress did not intend to provide whistleblower subpoena

authority.  *Citizens Coal Council*, 330 F.3d at 481.  In offering the whistleblower provision as an

amendment to the bill, its sponsors made clear that they patterned it after, and intended it to go

no further than, existing whistleblower provisions.  120 CONG. REC. H36393 (daily ed. Nov. 19,

1974) (statement of Rep. Symington) (noting that "it is significant to emphasize that we are not

initiating a new concept with the amendment, but rather we are extending to workers affected by

---

     [6] This subpoena authority no longer exists, as Congress replaced the arbitration board with new administrative procedures.  Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499, § 112 (1986); *see also* H.R. CONF. REP. NO. 99-962 (1986).

     [7] Although the grant of subpoena authority in the TSCA is broad and covers all of chapter 53 of title 15, United States Code, Congress reserved it exclusively for the EPA administrator, with no mention of the Secretary of Labor.  15 U.S.C. § 2610(c); *cf.* 15 U.S.C. § 2622(b)-(d) (specifically identifying the powers of the Secretary).

the act the same protection" authorized under the WPCA and the Occupational Safety and Health Act), (statement of Rep. Heinz) (stating that "[w]hat this amendment would accomplish is nothing new").

In short, under traditional canons of statutory construction, it seems clear that Congress specifically withheld subpoena authority for whistleblower investigations in the six environmental statutes relevant here.[8] *Brown & Williamson*, 529 U.S. at 132-33; *S. Calif. Edison*, 195 F.3d at 23; *Halverson*, 129 F.3d at 184; *accord Immanuel v. Dep't Labor*, 1998 WL 129932, at *5 (4th Cir. Mar. 24, 1998) (per curiam) (unpublished decision) (concluding that in enacting the WPCA Congress did not intend to authorize ALJs to issue subpoenas for whistleblower investigations); *see also United States v. Iannone*, 610 F.2d 943, 946-47 (D.C. Cir. 1979) (stating that if Congress had intended to grant the Department of Energy inspector general the authority to subpoena witnesses it would have specified as much in the Department of Energy Organization Act of 1977). The court therefore stops "danc[ing] the *Chevron* two-step" at step one. *Am. Fed'n of Labor & Cong. of Indus. Orgs. v. Fed. Election Comm'n*, 333 F.3d 168, 180 (D.C. Cir. 2003) (Henderson, J., concurring). Because the ALJ does not have authority to issue the subpoena underlying the plaintiff's subpoena claim, the court concludes that it lacks subject-

---

[8] At least one commentator has reached the same conclusion. *See, e.g.*, Stephen E. Smith, *Due Process and the Subpoena Power in Federal Environmental, Health, and Safety Whistleblower Proceedings*, 32 U.S.F. L. REV. 533, 538 (1998) (noting that although Congress has been generous in granting subpoena power to agencies, a "glaring example [of the limits of Congress' generosity] is the absence of the subpoena power in the federal environmental . . . whistleblower proceedings"). Moreover, prior to the ARB's ruling in *Childers*, the Secretary of Labor issued a final decision and order stating that

> It seems clear, for example, that the Secretary (or an ALJ) has no power under the [Energy Reorganization Act] to issue subpoenas or to punish for contempt for failure to comply with a subpoena . . . I do not believe the Secretary can assume powers not delegated to him by Congress simply by incorporating provisions . . . in departmental regulations. If he could, any agency could adopt rules, for example, giving itself subpoena power, which as noted above, it can only exercise when explicitly delegated.

*Malpass v. Gen. Elec. Co.*, Nos. 85-ERA-38 & 39 (Sec'y Mar. 1, 1994).

matter jurisdiction over that claim.[9]  Accordingly, the court grants the defendant's motion to

dismiss the plaintiff's first claim.  *Empagran*, 315 F.3d at 343; *Evans*, 166 F.3d at 647; *Rasul*,

215 F. Supp. 2d at 61.

### F. The Court Concludes that EPA's Denial of the Plaintiff's Request for Testimony Did Not Violate the APA[10]

#### 1. EPA's *Touhy* Regulations

EPA's *Touhy* regulations set forth procedures to be followed "when an EPA employee is

requested or subpoenaed to provide testimony concerning information acquired in the course of

performing official duties or because of the employee's official status."  40 C.F.R. § 2.401.  The

stated purpose of the regulations is

> to ensure that employees' official time is used only for official purposes, to maintain
> the impartiality of EPA among private litigants, to ensure that public funds are not
> used for private purposes and to establish procedures for approving testimony or
> production of documents when clearly in the interests of EPA.

*Id.* § 2.401(c); *see also Envtl. Enters., Inc. v. Envtl. Prot. Agency*, 664 F. Supp. 585, 586 n.2

(D.D.C. 1987) (paraphrasing the purpose of EPA's *Touhy* regulations).  Toward that end, the

regulations, which apply in all federal proceedings except those in which the United States is a

party, outline procedures for requests for voluntary testimony as well as subpoenas.  40 C.F.R. §§

2.401(a)(2), 2.403, 2.404.  To obtain voluntary testimony, a party must submit a written request

describing the nature of the testimony and the reasons why the testimony would be in the

interests of EPA.  *Id.* § 2.403.  After receiving a request for testimony or a subpoena, the EPA

---

[9] Alternatively, the plaintiff's subpoena claim would fail on the merits, as EPA's failure to comply with an invalid subpoena would not be arbitrary or capricious. *Bowen*, 476 U.S. at 626; *Tourus Records*, 259 F.3d at 736; *Houston Bus. Journal*, 86 F.3d at 1212 n.4.

[10] In this case, neither party has presented the court with disputed material facts. Because the submissions "show that there is no genuine issue as to any material fact and that the [parties are] entitled to a judgment as a matter of law," summary judgment is appropriate. FED. R. CIV. P. 56(c); *Celotex*, 477 U.S. at 322; *Diamond*, 43 F.3d at 1540.

general counsel or his designee determines whether compliance with the request or subpoena would "clearly be in the interests of EPA" and responds accordingly. *Id.* §§ 2.403, 2.404.

### 2. EPA's Denial of the Plaintiff's Request for Testimony Was Not Arbitrary and Capricious

At the outset, the court quickly disposes of the plaintiff's argument that EPA's *Touhy* regulations do not apply because the United States is a party within the meaning of 40 C.F.R. § 2.401(a)(2). Citing vaguely to "[t]he statutory language found in all six of the environmental whistleblower protection statutes," the plaintiff asserts that "Congress mandated that the Secretary of Labor is to function as [a] party throughout the course of the environmental whistleblower proceedings." Pl.'s Mot. at 10. In support of this argument, the plaintiff selectively quotes Fifth Circuit precedent, implying that the circuit rejected the Secretary of Labor's argument that "she should be considered an 'adjudicator', rather than a party." *Id.* (citing *Macktal v. Sec'y of Labor*, 923 F.2d 1150, 1154 n.14 (5th Cir. 1991)). As EPA points out, however, the *Macktal* court focused on the Secretary's status once the parties reach settlement, and does not stand for the proposition that the Secretary acts as a party for purposes of *Touhy* regulations. Def.'s Mot. at 21-24 (citing *Macktal*, 923 F.2d at 1153-54). In this case, the plaintiff and WASA – not the Secretary – are parties to the underlying administrative proceeding, and therefore EPA's *Touhy* regulations apply. *Accord Alexander*, 186 F.R.D. at 70 (noting that *Touhy* regulations apply only where "the United States is not a party to the original legal proceeding").

Turning to EPA's denial of the plaintiff's request pursuant to its *Touhy* regulations, the court concludes that the denial was not arbitrary and capricious. *Bowen*, 476 U.S. at 626; *Tourus Records*, 259 F.3d at 736; *Houston Bus. Journal*, 86 F.3d at 1212 n.4. In this case, the plaintiff submitted a letter describing the nature of the testimony and the reasons why the testimony would be in the interests of EPA Pl.'s Opp'n Attach. 5. EPA responded by issuing a determination that

the requested testimony would not be in EPA's interest. Pl.'s Mot. Attach. 3 at 2. First, EPA concluded that allowing the inspector to testify "would be incongruent with the notion of impartiality as contemplated by the regulation." *Id.* at 3. Second, EPA expressed concern that allowing the inspector to testify would have a potential cumulative effect, as "[t]he slope is indeed slippery and [EPA] could find itself caught in a morass of actions." *Id.* at 4. Third, EPA determined that given the inspector's position and responsibility, permitting the inspector to testify would thwart EPA's efforts to ensure that employees' official time is used only for official purposes, as "EPA simply does not have sufficient personnel both to carry out its mission and simultaneously allow testimony in the action."[11] *Id.* at 4. Finally, EPA provided the inspector's affidavit to provide an official record of his inspection and subsequent findings regarding Blue Plains, giving the parties "a consistent record of [the] inspection activities." Def.'s Mot. at 27.

In his challenge to EPA's denial, the plaintiff lists a number of factors that he asserts "clearly outweigh" EPA's justifications.[12] Pl.'s Mot. at 20-22. Specifically, the plaintiff argues that the inspector is essential to demonstrating that WASA misled EPA about its testing procedures and practices; the inspector's testimony will directly impact the ALJ's credibility determinations; the government and the public have an interest in ensuring that environmental laws are enforced and that EPA is not misled during safety inspections; EPA's forwarding of the inspector's affidavit to WASA conveys the impression that EPA has taken sides; the few hours

_____

[11] In its determination, EPA states that the inspector, who serves as the Regional Coordinator of the Chemical Accident Prevention Programs of the agency's Hazardous Site Cleanup Division, "manages a team of inspectors who are responsible for ensuring that chemical, biological and/or nuclear facilities handling toxic and/or flammable chemical substances in the states of Delaware, Maryland, Pennsylvania, Virginia, West Virginia and the District of Columbia are in compliance with the environmental laws governing chemical accident prevention." Pl.'s Mot. Attach. 3 at 4.

[12] The plaintiff also lists factors relevant to a motion to quash or modify a subpoena under Federal Rule of Civil Procedure 45. Pl.'s Mot. at 15-20. Because the defendant has not filed a Rule 45 motion, these factors are not relevant to the court's analysis.

required for testimony would have a negligible impact on EPA's function; EPA's determination

that testimony would not be in its interest is contrary to the legislative history of the six statutes;

and the whistleblower process is part of the statutes' enforcement mechanisms. *Id.*

These factors, however, fail to satisfy the plaintiff's burden of showing that EPA's

decision was arbitrary and capricious. *Kauffman*, 1997 WL 825244, at *2; *Wade*, 130 F.R.D. at

92. First, all of the reasons given by EPA for its denial of the plaintiff's request track the express

purpose of its *Touhy* regulations. *Compare id. with* 40 C.F.R. § 2.401(c); *Davis Enters. v. Envtl.

Prot. Agency*, 877 F.2d 1181, 1186 (3d Cir. 1989) (underscoring EPA's consideration of the

factors set forth in its *Touhy* regulations in refusing to permit the plaintiffs to take the deposition

of an EPA air-quality expert in a gasoline-spill case).

Second, EPA's conclusions that allowing the inspector to testify would disrupt his official

duties, compromise the agency's impartiality, and have a cumulative effect were not arbitrary or

capricious given the critical nature of the inspector's work, the character of the dispute, and the

very real potential that EPA employees responding to future reports of environmental violations

will be called to testify in subsequent whistleblower suits. *Accord Cleary, Gottlieb, Steen &

Hamilton v. Dep't of Health & Human Servs.*, 844 F. Supp. 770, 785 (D.D.C. 1993) (stating that

the Department of Health and Human Services acted rationally in concluding that allowing two

of its top researchers to give deposition testimony in a products-liability suit would disrupt the

advancement of public health and compromise the appearance of impartiality); *see also Davis

Enters.*, 877 F.2d at 1186-87 (finding that EPA did not act capriciously in determining that the

testimony of its air-quality expert would make it appear that the agency was taking sides and

would constitute a drain on EPA resources); *Kauffman*, 1997 WL 825244, at *3 (concluding that

OSHA's refusal to permit an investigator to testify in a wrongful-death action was not arbitrary or

capricious given OSHA's limited resources, the large number of requests the agency receives for testimony in similar cases and the release of the inspector's notes).

Third, although "there is a generalized public interest in having public employees cooperate in the truth seeking process by providing testimony useful in litigation," there also exists a strong public interest in maximizing the use of limited government resources to prevent accidents involving hazardous chemicals. *See Davis Enters.*, 877 F.2d at 1188; *see also Moore v. Armour Pharm. Co.*, 129 F.R.D. 551, 556 (N.D. Ga. 1990) (upholding a refusal by the Centers for Disease Control to permit testimony by two HIV researchers given the importance of their work). Finally, EPA provided the inspector's affidavit, which generally addresses the relevant matters raised by the ALJ. Def.'s Mot. at 28-29 & Attach. C; *accord Davis Enters.*, 877 F.2d at 1187 (stressing that "EPA agreed to provide [the air-quality expert's] testimony in the form of an affidavit"); *Kauffman*, 1997 WL 825244, at *3 (indicating that the OSHA investigator provided notes of his interview with the defendant's safety inspector).

The plaintiff may not agree with EPA's assessment and its denial of the plaintiff's request. But neither the plaintiff nor this court may substitute their judgment for that of the EPA. *Motor Veh. Mfrs. Ass'n*, 463 U.S. at 43. Because EPA made a rational decision in accordance with its *Touhy* regulations, the court determines that EPA's denial of the plaintiff's request for the inspector's testimony was not arbitrary and capricious. *Bowen*, 476 U.S. at 626; *Tourus Records*, 259 F.3d at 736; *Houston Bus. Journal*, 86 F.3d at 1212 n.4. Accordingly, the court denies the plaintiff's motion for summary judgment and grants the defendant's alternative motion for summary judgment on this claim. FED. R. CIV. P. 56(c); *Celotex*, 477 U.S. at 322; *Diamond*, 43 F.3d at 1540.

## IV. CONCLUSION

For all these reasons, the court grants the defendant's motion to dismiss, grants the defendant's alternative motion for summary judgment, and denies the plaintiff's motion for summary judgment. An order consistent with this Memorandum Opinion is separately and contemporaneously issued this __*50*__ day of September, 2003.

Ricardo M. Urbina
United States District Judge